The Honorable. The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Emiliano Emanuel Flores-Gonzalez, number 19-2204. Attorney Santos, please introduce yourself to begin. Good morning, Your Honor. Ivan Santos from the Federal Public Defender's Office on behalf of Mr. Emiliano Emanuel Flores-Gonzalez. May I reserve two minutes for rebuttal? Yes, and good morning. Good morning, Your Honor. An 18-month upward variance is a significant deviation. Now those are not my words, they are those of this circuit. And as we know, a court can take into consideration a variety of factors under Section 3553A in imposing sentence. That includes community-based considerations. However, in doing so, the court is not relieved of its obligation to ground its determination in case-specific factors related to Mr. Flores and his offense. And in this case, the sentencing judge abused its discretion and imposed a application of a base offense level that is unsupported by information or evidence to meet the preponderance standard. And two, the imposition of an upward variance based on the nature of the firearm involved in this case, devoid of any explanation as to how this case differs from any other mine-run machine gun case. And now I want to focus my attention on the judge's decision to upwardly vary its sentence. As expressly described by the district court in page 28 of the appendix, the case of Mr. Flores is not aberrational. His crime was not more harmful than others similar to his. Mr. Flores was charged in a one-count indictment for possession of a machine gun, and at the time of his arrest, he was also found in possession of two magazines and 63 total rounds of ammunition. Mr. Flores was at the time 19 years old and had no prior convictions. Yet without articulating case-specific grounds, the sentencing judge once again varied upwards from the guidelines, this time 18 months. And while Mr. Flores' case is clearly within the heartland of machine gun cases, the sentencing judge relied on his possession of a machine gun alone to justify this variant sentence. Just as in Rivera Berrios, in Garcia Perez, and Carrasquillo Sanchez, the sentencing judge anchored his decision in the community-based considerations but unattached from individual factors related to Mr. Flores and his actual offense. And I want to illustrate this decision with... Mr. Santos, the district courts in Puerto Rico continue to articulate that machine gun violence is a big problem there, and that we should view the whole island as the ecosystem by which we judge this, and that people are living in fear because of random machine gun violence. So your client possessed one. Why wouldn't that be an appropriate factor to consider those community-based concerns? Well, Your Honor, I don't deny that the court can consider community-based factors such as gun violence, as it has since the precedent in Flores-Machicote in this circuit that's from 2013. But the court has always indicated that to do so, it has to relate those community-based considerations back to the defendant and his actual offense. Now, in this case, that is totally lacking from the record and the judge's rationale in arriving at his decision. There's no background in Mr. Flores' case that the judge considered that would warrant relating those community-based considerations to arrive at an awkwardly variant sentence. The judge, as I indicated in page 28 of the appendix, expressly indicated that this case was not aberrational and it was, in fact, an unremarkable case when compared to other similar machine gun offenses that occur in this district. So in this way, this case is ruled by precedent in Rivera-Berrios and in Carrasquillo-Sanchez, where the court has the same remarks. We left open the possibility that a policy-based disagreement with the guideline under Kimbrough could support, potentially, an upward variance based on community circumstances. We didn't hold one way or the other, but we didn't treat Rivera-Berrios as necessarily foreclosing that, nor do I see how we could, given Kimbrough's Supreme Court decision. So, how do you address that feature of the case? Yes, Judge Barron, and I would just refer to the footnote in number two in the case of Carrasquillo-Sanchez, where the court indicated that this issue of Kimbrough and Kimbrough variance had been brought up by the government in a similar context. Now, in that case, the remarks by the judge at sentencing was, I don't think, and I quote, I don't think that the guidelines have a way to reflect the seriousness of the possession of this type of weapon and the harm that it's causing in Puerto Rico society, which is very similar from the remarks that were at issue in this case. And in that case, the court indicated that, nor indicated that it was relying on community-based considerations for a purpose other than to inform and contextualize the relevant need for deterrence as part of 3553 analysis. And that's exactly what happened here. So, I would indicate that this case is in such a similar fashion that it's ruled upon by that, and that in this case, there was no Kimbrough argument that was made by the judge in arriving at this decision. And this was, was this case decided prior to Rivera Berrios? Yes, your honor. Yes, your honor. Yes, that is correct. Obviously, the judge didn't have the ability to know the precedent, but it has been obviously developed since then. And what I want to illustrate to the court to demonstrate the judge's error in deciding on this case in the way that it did, it's his decision at the sentencing hearing to sue a sponsor and without warning, play a video of a shooting incident that occurred just 10 days prior to the sentencing hearing. Now, this video was not presented or requested to be admitted into evidence by either party. And the incidents displayed in the video are completely unrelated to Mr. Flores and do not reflect his conduct. They occurred almost five months after his arrest in a different municipality. And the judge even recognized that this video was not related in any way to Mr. Flores. The reason stated by the court for presenting that video was, and I quote, to show what a machine gun can do. And given that the sentence- Counsel, if you have a murder rate that's higher than on the mainland and you have some highly publicized horrific events involving machine guns, isn't it reasonable for the court to expect that the judges may regard crimes involving machine guns more seriously than they might in other jurisdictions and for the judges to respond to or share that perception? Well, yeah, we will be going back in that instance to Flores Machicote and that president that has already indicated that the court can take into account community-based considerations to arrive at a variant sentence. It just has to relate it to the offender, to Mr. Flores in this case. In the cases that have been decided by this district, all defendants where this court has upheld a variant sentence on the basis of community-based consideration have had past history that will show- Isn't that what the judge did here? He pointed to the community-based considerations, which was a higher murder rate and the highly publicized incidents involving machine gun and then related that to your client because your client had a machine gun. So how else would one relate community-based considerations to a plaintiff, to a defendant other than that way? Well, Your Honor, this circuit has rejected that sort of argument presented by district courts repeatedly in the case of Rivera Berrios, Garcia Perez, and Carrasquillo Sanchez. The sole possession of the machine gun alone is not enough. It is just the bare bones elements of the offense to arrive at the sentencing hearing where he is guilty of that offense. But there has to be some other elements in the defendant's history or background that would warrant a higher imposition sentence because we're not talking about the incidents that are being publicized in the media are not just possession of a machine gun. They are violent crimes that are committed using those machine guns. So it's not a one-on-one comparison. So the courts have to draw upon the history of that person to really assert that that machine gun, that particularly type of firearm in the hands of that person could be lethal or lead to some of the crimes that are publicized in the media, some of those violent crimes. So all of those defendants have history in that circuit. Yes, Your Honor. How would, on your view, given that our precedent seems on the one hand to preclude reliance on community standards as a sort of coloration for context, unless it's tied to some feature of the conduct that takes the case out of the mind run of cases. So it might be used to explain the extent of the variance or to, in combination with that feature, combine to justify there being any variance. And I take it Rivera-Barrios is suggesting that if the coloration is used just to describe the need for a higher sentence that's a mind run case. Otherwise, that might explain why you can adjust within the range, but it doesn't give a sufficient explanation, at least for variance as high as we've been seeing in these cases. But at the same time, our precedents, I think, has to allow for a Kimbrough-based potential rejection of the policy rationale for a guideline as a basis for a variance. We have not addressed whether that kind of rejection could be premised on localized concerns, such as Judge Thompson and Judge Caddo were asking about. So the difficulty for me is how do I know when the district court purports to be making a policy-based rejection of the guideline based on local circumstance and when it's merely doing the thing that Rivera-Barrios prohibits. Sure, Your Honor. So to see if I understand the question correctly, I think it's twofold. I think it's when does a court recognize that a Kimbrough-Barrios is being made on policy, on local policy, and two, whether that would be an appropriate determination. Well, for now, I would put it outside the second one, but I'm just sort of curious on the threshold. How do I know I'm dealing with a case in which Kimbrough is implicated? Sure, Your Honor. So firstly, in this case, Kimbrough was never mentioned. That would be a clear-cut sign, obviously. But also, there was no categorical policy disagreement. The judge at no point said that this type of consideration that he was taking into account would apply to every single machine gun case that he would confront in the future. And also, there was no rationale that would apply to every single case because he concentrated on particular circumstances present at the time of sentencing. That is a particular reason why I emphasize on the playing on the video. So Kimbrough-Barrios would have to be far-reaching and applicable to all cases, not just the case that the judge has before him at the time of sentencing as impressed upon by current situations occurring at that time. Not only the rationale would have to be explained as to how does the variance relate or reasonably relate to the situation that is the machine gun offenses, but also, it would also have to establish a benchmark through which the appellate court would review future decisions. That is to say, and if I may just briefly finish my point, that is to say, if we have a machine gun case, then the guideline would start at this range, and from then on, the court may evaluate individual factors. But none of this was put forth by the district court in this case. Kimbrough was never mentioned. No rationale that is categorical in that sense was elaborated, and no benchmark was established. So I would respectfully reserve the rest of my time for rebuttal. Thank you, Counselor. Attorney Santos, at this time, if you could please mute your audio and video. Attorney Conner, if you could unmute your audio and video and reintroduce yourself to the court in order to begin. Good morning. May it please the court, Greg Conner for the government. If the guidelines are to vary from them, it naturally follows that even in an ordinary case, district courts can impose a variant sentence based on a disagreement with the Sentencing Commission. Now, the government filed a 28-J letter in this case that we think is going to be very helpful for this court in terms of how to answer the Kimbrough question. We identify what we think is a problem and propose a solution. Now, I'll get into this in a second, but broadly speaking, floors in the government on components of what a court analysis addressing a Kimbrough question will consist of. But for starters, as far as what we don't think it should consist of, as we write in our letter, we think that the rule as stated in Zapete cannot survive after Kimbrough and Gall. And as a practical matter, this makes sense. This court provided a rule in 2006 about variant sentences. Then in 2007, the landscape changed dramatically with Kimbrough and Gall. Rita was also 2007, and then Spears was 2009. So, of course, this court's rule on variant sentences would have to adjust to what the Supreme Court said about variant sentences a year later. And that's why we positioned the rule in Zapete next to the rule language from other cases that do comport with Gall and Kimbrough and merely require that a district court varying in an ordinary case do so with an adequate explanation. And you'll notice in Flores' brief, he focuses on the sufficiency of the explanation. Well, that's consistent with our case law already, isn't it? That when there's a variance upward or even a variance downward, our case law suggests that we need an adequate explanation so that there can be effective appellate review as to whether there was a proper variance. That's exactly right. So, we're drawing on this court's case law and the Supreme Court's case law. What the government is trying to do is give this court a way to reconcile its cases on variant sentences with the Supreme Court cases on variant sentences. Since we're a panel, how do you not address the Kimbrough question in Rivera-Barrios? Yeah, so maybe if you could help me just try your hand at the question I just asked, counsel for the defendant, which is Rivera-Barrios is, as we have read it, prohibiting some kinds of reliance on local circumstance while our precedents have also said that it is not foreclosing a Kimbrough-based reliance on them because it simply didn't address that. So, to me, a critical question is how do I know whether I'm dealing with a case in which Kimbrough is being invoked rather than a case like Rivera-Barrios where it's understood not to be invoked? Okay, a few points. As far as whether, and this is what I was alluding to as far as the two components of an analysis for Kimbrough, it will entail answering whether there is a policy disagreement and then if there is, whether it's sufficiently explained. As far as whether there's a policy disagreement, this court has the benefit of three binding cases where there were policy disagreements and those are Kimbrough, Spears, and Politano. Kimbrough and Spears being Supreme Court cases and what the Supreme Court said in Kimbrough and Spears is that there is a Kimbrough policy disagreement when the district court judge expresses disagreement with the guidelines and especially how those provisions address the objectives in 3553. So, aside from Kimbrough, or aside from Rivera-Barrios not addressing Kimbrough, we think the way that the district court in this case addressed disagreement with the sentencing commission in drafting the guidelines for firearm offenses and how those address 3553A, we think that is an indisputable example of a policy disagreement and to put a fine point on it, Flores' argument argues that there wasn't any categorical disagreement but if you look at page 28 of the appendix, the district court expresses disagreement to quote a category of offenses. So, it's obviously a categorical disagreement and again, Kimbrough's sole argument as far as not being a policy disagreement is that the district court didn't mention Kimbrough but of course the district court doesn't have to mention Kimbrough to disagree with the sentencing commission which it did again at page 28. So, counselor, I don't know, have you finished answering Judge Barron's question before you move on? Yes, your honor. Okay, and so the sentencing commission is charged with trying to avoid sentencing disparities and in doing so, it undertakes a great deal of study, statistical data, what is happening over the various jurisdictions and so they're specifically charged with making reasonable recommendations and in the arena of the machine gun, they've altered the sentencing guidelines to seemingly account for some of the concerns that the Puerto Rico courts continue to express and so why isn't it that we would, having made those adjustments, demand that the district court be very explicit as to why the sentencing court got it wrong or why the sentencing court varied and also the extent of, I mean, what we're seeing in Puerto Rico is not just variances, we're seeing variances with seemingly similarly situated defendants all over the place and so for me, it's like really difficult to try to figure out, well, why would this one get a 12-month variance and this one get a 24-month variance? Okay, a few points in response because what you seem to be pointing at is what the Supreme Court called the possibility of, quote, closer review in Kimbrough and what the Supreme Court said is that appellate courts should conduct closer review when a specific provision reflects the expertise and empirical backing of the sentencing commission, but in Kimbrough itself, and by the way, this is also discussed in the Second Circuit Caveira decision, which we have in our brief, but the idea of whether or not closer review is warranted, closer review was not warranted in Kimbrough, it was not warranted in Caveira or Palitano from this circuit and we think there is no evidence that it should be, that closer review should be applied in this case either. There's no indication that... But there's a threshold question though, whether in light of the background in which Kimbrough arose, in which all the things Judge Thompson just mentioned about how guidelines are set is true and a policy disagreement is a point to make, given that here we have nothing like what the District Court did in the Caveira case, we don't have anything like what the District Court did in the Kimbrough case itself, and this decision was done prior to Rivera-Barrios, when it was at least arguable you could read our press other than Rivera-Barrios had read it, with respect to whether without even making a policy objection to the guideline, you could just say for coloration purposes, I think it's appropriate even in a mine run case to rely on community factors alone, why wouldn't we just treat this case just the way we treated Carrasquillo and Garcia Perez, both of which were also pre-Kimbrough, I mean pre-Rivera-Barrios, and remand for the District Court in light of Rivera-Barrios to now So first to address what I think was a question on the backing of the guidelines and whether there's some sort of closer review. No, it's not about that, it's about determining whether we have before us a sentence that's predicated on what the District Court thought was the kind of policy disagreement that Kimbrough was concerned with, or whether what we have is a District Court that simply thought pre-Rivera-Barrios, it was appropriate to rely on local circumstances for coloration even in a mine run case, which is what Rivera-Barrios subsequently said you cannot do, in which we've now remanded two sentences on the ground that the District Court didn't have benefit of Rivera-Barrios and therefore should reconsider its sentence in light of that. If it wants to then make a policy-based objection, we'd have that, we could consider it in the appropriate circumstances, but why should we assume that's what we have here? That's my question. Okay, right, I thought you were talking about the backing of Kimbrough, but as far as Rivera-Barrios and what the District Court thought in this case, we think there is a distinction, and this court wouldn't be its disagreement with the Sentencing Commission in drafting the guideline for machine gun possession. Is that the sum total of it, that one sentence? No, there are pages of it. The District Court then connects, and this gets into the adequacy of the explanation, but the District Court addresses its disagreement, announces its disagreement with the guideline provisions, and then connects that to the objectives of sentencing in 3553, namely the need for to reflect the seriousness of the offense and for deterrence, and says, look, these guideline provisions for machine gun possession are not deterring widespread machine gun possession, which is how we get the massacre that was at issue in the sentencing hearing. That's how we got 14 which provides a similar policy disagreement and a similar explanation, and I'll just conclude by saying that Politano, Spears, and Kimbrough should all guide this court's decision. Thank you. Thank you. At this time, Attorney Connor, if you would please mute your audio and video, and Attorney Santos, if you could please unmute and reintroduce yourself for your two-minute rebuttal. Yes, once again, good morning, Your Honors. Ivan Santos on behalf of the appellate. Good morning. Your Honor, just a few points that I would like to address. The Council for the Government seems to be making the argument that every time that a court disagrees with the guidelines calculation for that case and finds a factor on which to silent policy disagreement. Now, disagreements in Kimbrough need to be categorical, not just based on the case at issue before that district judge. Now, we have a discrepancy between what are Kimbrough variances, which are categorical, far-reaching, and would not take into as to how they relate to the individual. And the government keeps referring to Politano as a guiding principle, but Politano, and this was cited in the case in the opinion of Flores Machicote, establishes that sentencing judges' resort to community-based characteristics do not relieve him or her of the obligation to ground its determination on case-specific factors. So, and this is at page 74 of the Politano's decision, which is also referenced in Flores Machicote on page 24 of its opinion. Can I just ask you about that? Do you understand that there's two different sentences that a sentence like that could be understood? It's certainly the case that even in the Kimbrough situation, where there's a policy disagreement with the guideline, district court has to still consider the individual characteristics of the defendant. And if those are mitigating, they can't be just ignored because you have a policy disagreement with the guidelines. But I think what is not clear to me is why it would make sense to say that in order to rely on community characteristics to deviate from the guidelines, I have to root the community characteristics' relevance in some individualized factor that relates to that particular community circumstance. That's not obvious to me why that would be true. I understand what the court is saying. I would just indicate that this case is not a case where policy disagreement based on community factors is at issue. This is not, as I said, a Kimbrough case. I'm saying even if we didn't get all the way to Kimbrough, if you could say, if I have 5,000 rounds of ammunition and a single gun, that obviously makes it not a mine run case. Right? I would say so, yes, your honor. Now you have a district court that says, okay, well, it's not a mine run case because it's a jurisdiction that's overrun by this type of offense. What's wrong with that? Why does that have to then be rooted in some individual offense characteristic when the claim for it not being mine run is simply where it's occurred? I don't follow, your honor, the logic between what is the amount of ammunition and the community-based. What, if you could clarify. Yes. Sorry, your honor. It's just a simple point, which is you agree that it doesn't constitute a policy disagreement to describe a case as not mine run based on some characteristic of the offense and the way it was committed, such as having 5,000 rounds of ammunition rather than just the amount that would be enough for a single magazine, correct? Yes, 5,000 rounds is a particular characteristic. So now why is that different than a district court saying, well, what makes this case not mine run isn't the way it was committed, it's where it was committed, and it was committed in a jurisdiction that's overrun by this very type of offense. What's wrong with that? Because there is a individualized assessment of the defendant and his particular offense to ground the determination and just relying on a community-based consideration that is not related to the individual and his offense as would be having a particular amount of ammunition, such as 5,000 rounds in your example, then that is particular to that case. It wouldn't be far-reaching to every single case because arguably, if we're talking about community-based considerations, it would apply to every single case where there is a machine gun involved. And that is a moving target that is not really established in a particular rationale. If there are no further questions, I would just request a vacate and remanding of the sentence within the guideline range. Thank you. That concludes argument in this case. Attorney Santos and Attorney Conner, you should disconnect from the hearing at this time.